IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| FRANKENMUTH MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. |
| SPRING CREEK MEADOWS, | ) ) ) | |
| Defendant. | ) | |

**COMPLAINT TO VACATE APPRAISAL AWARD
AND FOR DECLATORY JUDGMENT**

Plaintiff, FRANKENMUTH MUTUAL INSURANCE COMPANY ("Frankenmuth"), by its attorneys, O'HAGAN MEYER, LLC., for its Complaint for Declaratory Judgment and Petition to Vacate the Appraisal Award dated June 23, 2022 issued by Umpire, Steven L. Schmitt as to the insured Defendant, SPRING CREEK MEADOWS ("Spring Creek"), states as follows:

**STATEMENT OF CASE**

1. This action seeks to vacate the June 23, 2022 Appraisal Award issued by Umpire Steven L. Schmitt pursuant to the appraisal provisions of the insurance policy issued by Frankenmuth to Spring Creek.

2. Further, this action seeks a declaration that Frankenmuth's obligation to pay Spring Creek is limited to the amount Spring Creek actually spent or spends for a claimed loss caused by hail and wind.

**JURISDICTION AND VENUE**

3. Frankenmuth is a mutual insurance company formed under the laws of the State of Michigan with its principal place of business in Frankenmuth, Michigan.

4. Spring Creek is an Illinois corporation with its principal place of business located at 2601 Reid Farm Road, Rockford, IL 61114.

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000, exclusive of interest and costs, and Frankenmuth is not a citizen of the state in which the Defendant is a citizen.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because this is a civil action founded on diversity of citizenship including Defendant, who does business or resides within this District, and because this case involves coverage under an insurance policy issued in this District concerning a Loss that allegedly happened in this District.

**FACTS**

7. At all times relevant, Spring Creek was the owner of the property commonly known as 2601 Reid Farm Road, Rockford, IL 61114 (hereinafter referred to as the "Insured Property").

8. Frankenmuth issued to Spring Creek a commercial insurance policy, Policy Number CPP BOP6601359 (herein referred to as "the Policy"). The Policy attached hereto as Exhibit 1.

9. On or about April 7, 2020 while the Policy was in full force and effect, the Petitioner claimed that its property sustained direct physical loss of or physical damage to the Insured Property by hail and wind ("Loss").

10. Spring Creek submitted a claim (Claim No. 000200085325) to Frankenmuth under the Policy for the Loss in the amount of $274,305.06 on or about July 30, 2021. (See Exhibit 2).

11. On August 25, 2020, Frankenmuth investigated the Loss and prepared an estimate of Replacement Cost Value ("RCV") of $208,256.05. (See Exhibit 3).

12. Frankenmuth paid the undisputed amount of $164,352.51 representing the Actual Cash Value ("ACV") owed for the Loss. (See Exhibit 4).

13. Then, Frankenmuth agreed to the February 19, 2021 estimate prepared by Spring Creek's contractor, Apex General Contracting, ("Apex"), in the amount of $258,825.13. (See Exhibit 5).

14. On July 1, 2021, Frankenmuth revised its estimate to $274,305.06. (See Exhibit 6).

15. Thereafter, Frankenmuth received a Public Adjuster Contract from Coastal Claims Services, Inc. ("Coastal Claims") and a June 9, 2021 estimate prepared by Coastal Claims in the amount of $316,662.73. (See Exhibits 7 and 8).

16. Then, Spring Creek demanded an appraisal. Spring Creek retained John Dekker of Dekker Appraisal as its appraiser. Frankenmuth retained Michael Scott of Sedgwick as its appraisal.

17. The appraisers could not agree on an estimate of the Loss or an umpire. So, on October 14, 2021, Frankenmuth filed a petition to appoint an umpire in Winnebago County.

18. After receiving filings from Spring Creek and Frankenmuth, Judge Eugene Doherty appointed one of Spring Creek's recommended umpires, Steve Schmitt of Pensacola, FL. (See Exhibit 9).

19. Up to that point, the estimates did not include replacement of HVAC equipment. Instead, the estimates included an allowance for repair (combing) of $1,762.69 (Frankenmuth's estimate) or $2,414.83 (Coastal's estimate).

20. After HVACi, an HVAC inspector, determined that replacement was required, the agreed estimate for that work was $66,833.97.

21. Mr. Scott's last RCV estimate before the mutual inspection with the umpire dated, January 20, 2022, was $330,584.47. (See Exhibit 10).

22. On March 29, 2022, Mr. Dekker prepared two estimates, one for completed work and one for work not yet completed. Mr. Dekker's completed work estimate was $376,170.85. (See Exhibit 11). Mr. Dekker's estimate for work not completed was $112,065.29. (See Exhibit 12). His total estimate was, accordingly, $488,236.14.

23. On May 27, 2022, the appraisers and umpire met at the Insured Property for a mutual inspection.

24. On June 22, 2022, the umpire issued his Appraisal Award with RCV estimated to be $468,841.83, comprised of work completed in the amount of $369,930.06 (See Exhibit 13) and work not completed in the amount of $98,911.77. (See Exhibit 14).

25. During the mutual inspection, Mr. Scott inquired about the actual cost of the work done by Apex to replace the roof.

26. In response, Mr. Dekker said that Apex would not provide material and labor costs related to repair and the Umpire accepted that.

27. Notwithstanding that conversation, Mr. Scott asked the Umpire to research actual cost of repair or replacement.

28. Based upon information and belief, the Umpire did not receive or review any information regarding the actual cost of repair or replacement.

29. Regarding the actual repairs apparently completed by Apex, during the mutual investigation with the Umpire, Mr. Dekker confirmed that Apex's original estimate in the amount of $258,825.13 was, in fact, a bid to do the repairs.

30. On August 6, 2021, Apex pulled a Permit for Spring Creek, stating that the valuation of the roofing work was $207,000. (See Exhibit 15).

31. On July 7, 2022, Frankenmuth, through counsel, requested from Spring Creek's counsel all paid invoices for the repair/replacement of the Spring Creek Roof and HVAC equipment, including all checks or proof of payment. (See Exhibit 16).

32. To date, Frankenmuth has not received a response.

33. The Policy provides:

> **5. Loss Payment**
>
> In the event of loss or damage covered by this policy:
>
> a. At our option, we will either:
>
> (1) Pay the value of lost or damaged property;

   (2) Pay the cost of repairing or replacing the lost or damaged property;
   (3) Take all or any part of the property at an agreed or appraised value; or
   (4) Repair, rebuild or replace the property with other property of like kind and quality, subject to Paragraph d.(1)(e) below.

 b. We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

 c. We will not pay you more than your financial interest in the Covered Property.

 d. Except as provided in Paragraphs (2) through (7) below, we will determine the value of Covered Property as follows:

  (1) At replacement cost without deduction for depreciation, subject to the following:

   (a) If, at the time of loss, the Limit of Insurance on the lost or damaged property is 80% or more of the full replacement cost of the property immediately before the loss, we will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

    (i) The Limit of Insurance under Section I -- Property that applies to the lost or damaged property;

    (ii) The cost to replace, on the same premises, the lost or damaged property with other property;

     i. Of comparable material and quality; and
     ii. Used for the same purpose; or

    (iii) The amount that you actually spend that is necessary to repair or replace the lost or damaged property.

    \*\*\*

   (d) We will not pay on a replacement cost basis for any loss or damage:

    (i) Until the lost or damaged property is actually repaired or replaced; and

    (ii) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

5

**COUNT I**
**(Petition to Vacate Umpire's Appraisal Award)**

34. The general rule is that findings of appraisers are conclusive on the parties in the absence of an undisclosed conflict of interests, provable bias, fraud, or mistake and will not be set aside merely because the valuations appear too high. *Giddens v. Board of Ed. of City of Chicago,* 398 Ill. 157 (1947).

35. However, the above Policy language limits the loss payment to the "amount that you actually spend that is necessary to repair or replace the lost or damaged property."

36. Illinois courts have stated that the appraisal provision in a policy is limited to value determinations and does not permit the resolution of causation or coverage issues. *Spearman Industries, Inc. v. St. Paul Fire & Marine Ins. Co.,* 109 F. Supp. 2d 905, 907 (N.D. IL 2000) (holding "causation is a matter for the courts – not an appraiser – to decide"); *Breckenridge Apartment Homes LLC v Greater New York Mutual Ins. Co.*, 2016 WL 11700913 (N.D. IL October 31, 2016) (appraisal provision held not to permit resolution of causation or coverage issues).

37. By ignoring the actual cost of repair or replacement of the roof and HVAC equipment, the Umpire has at least made a significant mistake, if not worse, by ignoring clear evidence of the value of the Loss in favor of Spring Creek.

38. The Umpire's disregard of the actual cost of repair or replacement of the roof and HVAC equipment is a mistaken application of the above Policy provision, *i.e.,* a coverage decision that is outside of the purview of an umpire, and justifies vacating the Appraisal Award.

WHEREFORE, Plaintiff, FRANKENMUTH MUTUAL INSURANCE COMPANY, requests this Court to vacate the Appraisal Award dated June 23, 2022 issued by Umpire, Steven L. Schmitt, and for all other just and equitable relief, including costs of this suit.

## COUNT II
### (Complaint for Declaratory Judgment)

39. Plaintiff incorporates and restates the allegations of Paragraphs 1 through 38 above as if fully set forth herein.

40. As noted, the above Policy language limits the loss payment to the "amount that you actually spend that is necessary to repair or replace the lost or damaged property."

41. Based on information and belief, Spring Creek spent significantly less on repairs and replacement of the roof and HVAC equipment at the Insured Property.

42. Accordingly, Frankenmuth's obligation under the Loss Payment provision of the Policy should apply to limit the Loss to the amount Spring Creek actually spent or spends to repair or replace the roof and HVAC equipment.

WHEREFORE, Plaintiff, FRANKENMUTH MUTUAL INSURANCE COMPANY, prays this Court enter the following judgment:

A. A declaration finding Frankenmuth owes no more to Spring Creek for the Loss than the amount Spring Creek actually spent or spends that is necessary to repair or replace the roof and HVAC equipment at the Insured Property; and

B. For all other just and equitable relief, including costs of this suit.

Dated: July 22, 2022

Respectfully Submitted,

By: *s/John D. Dalton*
One of the Attorneys for Plaintiff

John D. Dalton (ARDC No. 6197108)
Steven R. Apel (ARDC No. 6198015)
O'HAGAN MEYER LLC
One East Wacker Drive, Suite 3400
Chicago, Illinois 60601
PH: (312) 422-6100
FX: (312) 422-6110
jdalton@ohaganmeyer.com
sapel@ohaganmeyer.com